UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN ALTERNATIVE INSURANCE CORPORATION,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>THOMAS COYNE,<br><br>　　　　Defendant. | Case No. 14-cv-01483-JSW   (DMR)<br><br>**ORDER ON JOINT DISCOVERY LETTER**<br><br>Re: Dkt. No. 52 |

　　　　Plaintiff/counterdefendant American Alternative Insurance Corporation ("AAIC") and Defendant/counterclaimant Thomas Coyne filed a joint discovery letter in which AAIC moves to compel the production of six documents withheld from Coyne's production. [Docket No. 52 (Joint Letter).] At the June 4, 2015 hearing, the court ordered Coyne to submit four of the documents for in camera inspection. Having reviewed the documents, and having carefully considered the parties' arguments and authority, the court grants AAIC's motion.

## I. Statement of Facts

### A.　Factual Background

　　　　This insurance coverage action concerns whether AAIC owed a duty to defend or indemnify Coyne in an underlying action arising out of a fire in Coyne's condominium. The parties allege the following. AAIC issued a $5,000,000 excess liability insurance policy to Coyne, who is a co-owner of a residential building located at 2560 California Street in San Francisco, California (the "California Street building"). (Am. Compl. ¶¶ 7, 22.) The AAIC policy provided excess coverage beyond the primary policy issued by Farmers Insurance Exchange ("Farmers") to Perine Place Homeowner's Association ("Perine Place"), the homeowners association for Coyne's unit, for which Coyne is an officer or director. (Am. Compl. ¶ 26; Counterclaim ¶ 4.) Coyne was also insured by a policy issued by Fire Insurance Exchange ("FIE") that covered him as a

condominium unit owner. (Am. Compl. ¶¶ 24-25.)

In July 2010, in the course of construction activities, a fire broke out in the California Street building and spread to an adjacent building, 2550 California Street, causing significant damage. (Am. Compl. ¶ 23.) In July 2012, AAIC received a letter from third party insurer Travelers Insurance Company demanding reimbursement of benefits that Travelers paid under a policy issued to the owners of the 2550 California Street building. AAIC subsequently disclaimed coverage for the claims asserted against Coyne based on exclusion "q," which provides that the policy does not apply to "[l]oss arising out of any contracting or property development operations by or on behalf of a covered person." (Am. Compl. ¶¶ 21, 29, 30.)

In June 2013, the owner of the 2550 California Street building, Armenta Properties I, LLC, filed a complaint against Coyne and other defendants for damages it sustained as a result of the fire ("*Armenta*" or "underlying action"). (Am. Compl. ¶ 31.) Coyne tendered defense of the *Armenta* claims to FIE, AAIC, and Farmers. AAIC again denied coverage under its policy based on exclusion "q." (Am. Compl. ¶¶ 40-41; Counterclaim ¶ 16.) In June 2014, the parties in *Armenta* settled the case by stipulated judgment for approximately $1.7 million. (Stargardter Decl., March 10, 2015, Ex. 1 (Stipulated Judgment).) FIE paid $267,000 (the remaining policy limits available for the loss), and Farmers agreed to contribute up to $658,000 towards satisfaction of the judgment against Coyne.[1] (Stipulated Judgment ¶ 3.[2])

AAIC filed this action in March 2014, seeking a declaratory judgment that it had no duty to defend Coyne in *Armenta* based solely on exclusion "q." Coyne counterclaimed, alleging that AAIC unreasonably relied on exclusion "q." Coyne also alleges that AAIC failed to properly investigate Coyne's claims.

In January 2015, AAIC obtained a copy of the Farmers policy from Coyne in discovery,

---

[1] This was actually the second lawsuit arising from the fire. In 2011, Coyne's neighbor, James A. Scott, sued Coyne and others for fire damage to his unit ("*Scott*"). *Scott* was apparently dismissed with prejudice in January 2013. *Scott* is not the underlying action for this lawsuit, but according to Coyne, the defense and settlement of *Scott* diminished the balance of the Farmers policy limits. [Docket No. 20 (Aug. 7, 2014 Joint CMC Statement 5).]

[2] The stipulated judgment contains a provision that Coyne would file a counterclaim against AAIC in this declaratory relief action to "pursue any and all viable [causes] of action." (Stipulated Judgment ¶ 5.)

and learned that the policy provided coverage subject to a per occurrence limit of $2,000,000 and an aggregate limit of $4,000,000, both of which remain intact. (Joint Letter 1.) As set forth in the stipulated judgment, the FIE policy provided a per occurrence/aggregate limit of $300,000, the remaining $267,000 of which was used to settle *Armenta*. Therefore, according to AAIC, the combined limits of insurance available to Coyne under the FIE and Farmers policies exceeded the $1.7 million stipulated judgment entered in *Armenta*. AAIC contends that under California law, it has no excess coverage obligation to Coyne, because the FIE and Farmers policy limits have not been exhausted.

AAIC filed an amended complaint in April 2015 alleging there is no potential for coverage under its policy because the loss sustained in *Armenta* was not above the "retained limit," as required by the AAIC policy's insuring agreement. (Am. Compl. ¶¶ 9, 48.) The policy defines "retained limit" as "[t]he sum of the applicable limit of liability of your primary insurance as shown in the policy's Umbrella Schedule and the actual amount collectible under any other insurance which applies." (Am. Compl. ¶¶ 19, 49.) AAIC avers that "[b]ecause the claim for damages asserted against Thomas Coyne is not above the retained limit of the AAIC Policy, this loss does not fall within the AAIC Policy's insuring agreement and AAIC has no duty to defend or indemnify" Coyne in the underlying action. (Am. Compl. ¶ 55.)

**B. Discovery Dispute**

AAIC propounded requests for production (RFPs) seeking copies of correspondence between Coyne and other insurers regarding insurance coverage for *Armenta*. AAIC subsequently asked Coyne to produce all communications from FIE and Farmers to Coyne regarding the duty to defend and indemnify Coyne against the claims asserted in *Armenta*. Coyne produced a privilege log in which he identified 15 documents withheld from production on various grounds. At issue in the present dispute are six letters between Coyne or his attorney and Farmers (collectively, the "Farmers correspondence"). In his privilege log, Coyne describes each of them simply as "Letter re: Coverage." All are dated between October 2013 and February 2014. Coyne objects to producing these six documents on the grounds of relevance, attorney-client privilege which extends to correspondence between Coyne and Farmers under the "common interest" doctrine,

3

non-discoverability under California's Civil Discovery Act,[3] and work product protection.[4]

## II. Legal Standards

Federal Rule of Civil Procedure 26 provides that a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). "Relevancy, for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries." *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 679-80 (N.D. Cal. 2006). "[T]he party opposing discovery has the burden of showing that discovery should not be allowed, and also has the burden of clarifying, explaining and supporting its objections with competent evidence." *La. Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012). Federal Rule of Civil Procedure 26 also provides that a party withholding information under a claim that it is privileged or subject to protection as trial preparation material must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim. Fed. R. Civ. Proc. 26(b)(5)(A).

In this diversity action, California law governs resolution of issues arising out of the invocation of the attorney-client privilege. Fed. R. Evid. 501. Under California law, the attorney-client privilege is governed by statute and applies to confidential communications between client and lawyer during the course of the attorney-client relationship. *See* Cal. Evid. Code § 952. The party claiming a privilege bears the burden to show that the evidence it seeks to suppress falls within the terms of an applicable statute. *Great American Assur. Co. v. Liberty Surplus Ins. Corp.*, 669 F. Supp. 2d 1084, 1090 (N.D. Cal. 2009); *HLC Props., Ltd. v. Superior Court*, 35 Cal. 4th 54,

---

[3] To the extent Coyne's privilege log entries refer to the California Civil Discovery Act, his references are misplaced. This action is pending in federal court. The Federal Rules of Civil Procedure govern discovery. California's Civil Discovery Act, Code of Civil Procedure sections 2016.010 *et seq.*, does not. In the joint letter, Coyne does not discuss or provide any support for his assertion that the Civil Discovery Act governs the discoverability of these documents.

[4] Coyne appears to have abandoned his assertion of work product protection by failing to address it in the joint letter.

4

59 (2005).

Under California Evidence Code section 912, a party waives the attorney-client privilege if it "has disclosed a significant part of the communication or has consented to such disclosure made by anyone." Cal. Evid. Code § 912(a). Waiver occurs where disclosure is made to "strangers to the attorney-client consultation" or to persons who "possess interests adverse to the client." *Ins. Co. of N. Am. v. Superior Court*, 108 Cal. App. 3d 758, 766 (1980). However, California recognizes the "common interest" doctrine, "appropriately characterized . . . as a nonwaiver doctrine." *OXY Res. Cal. LLC v. Superior Court*, 115 Cal. App. 4th 874, 889 (2004).[1] The doctrine "allows disclosure between parties, without waiver of privileges, of communications protected by the attorney-client privilege or attorney work-product doctrine where the disclosure is necessary to accomplish the purpose for which the legal advice was sought." *Citizens for Ceres v. Superior Court*, 217 Cal. App. 4th 889, 914 (2013) (citation omitted). The common interest doctrine "does *not* mean there is 'an expanded attorney-client relationship encompassing all parties and counsel who share a common interest." *Id.* (citing *OXY*, 115 Cal. App. 4th at 889) (emphasis in original). As one court explained, "'[f]or the common interest doctrine to attach, most courts seem to insist that the two parties have in common an interest in securing legal advice related to the same matter – and that the communications be made to advance their shared interest in securing legal advice on that common matter.'" *OXY*, 115 Cal. App. 4th at 891 (citing *First Pac. Networks, Inc. v. Atl. Mut. Ins. Co.*, 163 F.R.D. 574, 581 (N.D. Cal. 1995)); *accord Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007). Therefore, under California law, "the [attorney-client or work product] privilege survives disclosure to a party with a common interest only if it is necessary to accomplish the privilege holder's purpose in seeking legal advice." *Citizens for Ceres*, 217 Cal. App. 4th at 916.

A party seeking to rely on the common interest doctrine "must first establish that the communicated information would otherwise be protected from disclosure by a claim of privilege."

---

[1] The common interest doctrine is also referred to as the "joint defense doctrine." *See In re Juniper Networks, Inc. Sec. Litig.*, Nos. C 06-4327 JW (PVT), C 08-00246 JW (PVT), 2009 WL 4644534, at *1 (N.D. Cal. Dec. 9, 2009).

*OXY*, 115 Cal. App. 4th at 890. "The next step in the analysis is to determine whether disclosing the information to a party outside the attorney-client relationship waived any applicable privileges." *Id*.

### III. Discussion

**A. Relevance**

In this lawsuit, AAIC alleges that it was not obligated to defend or indemnify Coyne under its policy because the loss sustained in *Armenta* did not exceed the retained limit. The AAIC policy defines "retained limit" as "[t]he sum of the applicable limit of liability of your primary insurance as shown in the policy's Umbrella Schedule and the actual amount collectible *under any other insurance which applies*." (Am. Compl. ¶¶ 19, 49 (emphasis added).) According to AAIC, the insurance coverage available to Coyne under the Farmers policy qualifies as "other insurance which applies" for purposes of calculating AAIC's retained limit. AAIC contends that since the defense of *Armenta* did not result in exhaustion of the combined FIE and Farmers policy limits, AAIC's excess coverage obligation was not triggered. AAIC asserts that under California law, an excess insurer has no duty to defend or indemnify until all underlying policies available to the insured are exhausted, a principle known as "horizontal exhaustion." *See Cmty. Redevelopment Agency v. Aetna Cas. & Sur. Co.*, 50 Cal. App. 4th 329, 339-340 (1996) ("[u]nder the principle of horizontal exhaustion, *all* of the primary policies must exhaust before *any* excess will have coverage exposure.").

In response, Coyne denies that the Farmers policy constitutes "other insurance," and should not be counted toward AAIC's retained limit. (Answer ¶ 51.) Coyne appears to contend he was not an insured under the Farmers policy with respect to the claims asserted against him in *Armenta*, and that Farmers did not owe a duty to defend or indemnify him in that action. (Joint Letter 4.) Therefore, a key issue in this litigation is whether the Farmers policy qualifies as "other insurance" which must be exhausted before AAIC's excess coverage is triggered.

According to AAIC, the Farmers correspondence is relevant because it may indicate whether Coyne or Farmers acknowledged that the Farmers policy potentially afforded coverage to Coyne for the claims asserted in *Armenta*, which in turn would qualify the Farmers policy as

6

"other insurance." AAIC states that the correspondence is also relevant to determining whether Coyne's representations to Farmers about whether he was entitled to coverage under the Farmers policy were consistent with his positions in this litigation.

Coyne's arguments on relevance are not clear. Coyne appears to argue that Farmers' contribution towards the stipulated judgment does not constitute an admission that Coyne was an insured under the Farmers policy. Coyne further asserts that regardless of Farmers' coverage position in *Armenta* (as reflected in the Farmers correspondence), Farmers may pursue equitable indemnity from AAIC. *See Mitchell, Silberberg & Knupp v. Yosemite Ins. Co.*, 58 Cal. App. 4th 389, 394 (1997) ("an insurer may settle a claim against its insured without prejudice to its right to seek equitable indemnity from other insurers potentially liable on the same risk on the ground that, although the settling insurer's policy does *not* provide coverage, there *is* coverage under the other policies." (citations omitted)); *Mt. Hawley Ins. Co. v. Golden Eagle Ins. Corp.*, 645 F. Supp. 2d 878, 886 (2009) ("[e]quitable indemnity applies in cases in which one party pays a debt for which another is primarily liable and which in equity and good conscience should have been paid by the latter party." (citation and quotation marks omitted)).

These arguments address the merits of the lawsuit, rather than the question of relevance. The Farmers correspondence may contain evidence that is relevant to AAIC's theory that the Farmers policy constitutes "other insurance" for purposes of calculating AAIC's retained limit. The court therefore overrules Coyne's relevance objection.

**B.    Attorney-Client Privilege**

Coyne also contends that communications between Coyne, his counsel, and Farmers are subject to a "joint defense" assertion of the attorney-client privilege.

As the court noted at the hearing, Coyne did not assert the attorney-client privilege as a basis for withholding two of the six documents (letters dated 10/7/2013 and 10/24/13). The court therefore ordered Coyne to produce them by June 5, 2015.

With respect to the four remaining letters,[5] Coyne argues that the communications between

---

[5] The remaining documents are those listed on the privilege log with the following dates: 12/5/2013, 1/3/14, 1/30/14, and 2/18/14.

Coyne, his counsel, and Farmers are privileged because they were written to advance their common interest in securing legal advice regarding the defense in *Armenta*. *See OXY*, 115 Cal. App. 4th at 891. To buttress this assertion, Coyne points to the parties' stipulated judgment in *Armenta*, which expressly sets forth their agreement that "there will be a joint attorney-client privilege as it relates to pursuing litigation" against AAIC and others. (Joint Letter Ex. D.)

As a preliminary matter, the court notes that the parties' "joint attorney-client privilege" agreement in the *Armenta* stipulated judgment is not dispositive. Such an agreement "cannot be relied upon to shield nonprivileged communications . . . from disclosure." *OXY*, 115 Cal. App. 4th at 893. While such an agreement may "strengthen[] the case against waiver [of the privilege]," it "is neither a requirement nor a guarantee," since Coyne must still meet his burden to establish a claim of privilege as to the documents in question. *See id*. at 892-93.

"Although the protection of the attorney-client privilege is absolute, the protection afforded by the common interest doctrine is qualified, because it depends on the content of the communication." *OXY*, 115 Cal. App. 4th at 896. "[T]he two parties [must] have in common an interest in securing legal advice related to the same matter—and . . . the communications [must] be made to advance their shared interest in securing legal advice on that common matter." *Id*. at 891 (quotation marks and citation omitted). Moreover, "it is essential that participants in an exchange have a reasonable expectation that information disclosed will remain confidential . . . [and] disclosure of the information must be reasonably necessary for the accomplishment of the purpose for which the lawyer was consulted." *Id*. at 891. Therefore, in order to determine the scope of the privilege, the court must look at "the content of the subject communications, as well as the circumstances, for indications on whether" they were made to advance the common interests of Coyne and Farmers. *See Seahaus La Jolla Owners Ass'n v. Superior Court*, 224 Cal. App. 4th 754, 775 (2014) (citing *OXY*, 115 Cal. App. 4th 891)).

The court has reviewed the four letters at issue. They reflect communications between Coyne, his counsel, and Farmers regarding Coyne's insurance coverage under the Farmers policy in *Armenta*. The content and circumstances of the communications lead the court to find that the letters were not made to advance a "shared interest in securing legal advice" on a common matter.

8

They do not reflect any legal advice or strategy regarding Coyne's defense in *Armenta*; instead, they reflect communications about Farmers' coverage of Coyne in that action. The letters dated December 5, 2013 and January 3, 2014 can be described as adversarial, suggesting Coyne and Farmers did not have an expectation that their communications would be maintained in confidence. *See OXY*, 115 Cal. App. 4th at 894. The subsequent two letters dated January 30, 2014 and February 18, 2014, contain communications relating to the resolution of a coverage-related dispute between the parties, but do not involve matters of common interest. The fact that the letters relate in some way to *Armenta* does not transform them into communications to advance a "shared interest in securing legal advice" for which "disclosure to a third party was reasonably necessary to accomplish the lawyer's purpose in the consultation." *See id*. at 896.

At the hearing, citing *OXY*, defense counsel suggested that even though Coyne and Farmers' interests initially may have been adversarial, the fact that their interests ultimately converged with respect to Coyne's defense in *Armenta* controls the question of whether the common interest doctrine applies to shield all of their communications. While *OXY* recognized that the concept of "joint defense" has expanded over the years to encompass "parties who oppose one another in a case but are able to join forces on a particular issue of common interest," *see id*. at 888, it does not stand for the proposition that the common interest doctrine reaches to protect *all* communications between the parties, regardless of whether their interests were common at the time of the communications. In fact, the court expressly held the opposite, that the "protection afforded by the common interest doctrine is qualified, because it depends on the *content of the communication*." *Id*. at 896 (emphasis added) ("[f]or example, when the parties were negotiating over the 'value' of a particular property, their interests may have been adversarial; when the parties were discussing environmental issues that might affect the properties that were being transferred, their interests were 'common.'"). Accordingly, the court concludes that the common interest doctrine does not apply to shield the Farmers correspondence from discovery.

## IV. Conclusion

For the foregoing reasons, AAIC's motion to compel is granted. Coyne shall produce the privilege log entries dated December 5, 2013, January 3, 2014, January 30, 2014, and February 18,

9

1  2014 within five days of the date of this order.

3  **IT IS SO ORDERED.**

4  Dated: June 19, 2015



_____
Donna M. Ryu
United States Magistrate Judge