**United States District Court**
For the Northern District of California

1

2

3

4

5                    IN THE UNITED STATES DISTRICT COURT

6

7                 FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9   AMERICAN ALTERNATIVE INSURANCE          No. C 14-01483 JSW
    CORPORATION,
10
                  Plaintiff,
11                                          **ORDER GRANTING PLAINTIFF'S**
        v.                                  **MOTION FOR SUMMARY JUDGMENT**
12                                          **AND DENYING DEFENDANT'S**
    THOMAS COYNE,                           **MOTION FOR PARTIAL SUMMARY**
13                                          **JUDGMENT**
                  Defendant.
14   _____/

15

16      Now before the Court is the motion for summary judgment filed by Plaintiff American

17   Alternative Insurance Corporation ("AAIC") and the cross-motion for partial summary judgment

18   filed by Defendant Thomas Coyne ("Coyne"). Having carefully reviewed the parties' papers and

19   considered their arguments and the relevant authority, and good cause appearing, the Court hereby

20   GRANTS AAIC's motion for summary judgment and DENIES Coyne's motion for partial summary

21   judgment.

22                                    **BACKGROUND**

23      Plaintiff AAIC issued a personal umbrella insurance policy to defendant Coyne who owned a

24   condominium in a building located at 2560 California Street in San Francisco, California. Coyne

25   was having work done on his condominium when a subcontractor started a fire in his unit resulting

26   in substantial damages to the building next door. The insurer of the next door neighbor, Armenta

27   Properties I, LLC ("Armenta"), on behalf of its insurer, Travelers Insurance Company ("Travelers"),

28   filed suit against Coyne for the damages it incurred as a result of the fire ("Armenta Action"). The

complaint in the Armenta Action alleges that Coyne, in his individual capacity and as the President, a majority shareholder, board member, and/or controlling member of Perine Place Owners Association ("Perine Place"), the condominium's home owners' association, was liable for the fire that caused damage to the building owned by Armenta.

Although they never executed a written contract, Coyne had hired a general contractor, FBD Construction, to remodel his residential unit. FBD Construction hired West Cork Welding as a subcontractor to perform welding on a steel brace that would allow Coyne to connect his living space via indoor access. On July 30, 2010, a fire broke out in Coyne's unit as a result of sparks from the welding work entering the walls. The fire spread to the adjacent building, 2550 California Street, owned by Armenta, which was only a few inches away from the exterior of Coyne's unit. The fire caused substantial damage to the Armenta building, which was insured by Travelers Insurance Company ("Travelers"). Travelers paid for the losses incurred by Armenta.

At the time of the fire, Coyne was insured under two primary policies, by both Fire Insurance Exchange to Coyne as an individual ("FIE Policy") and by Farmers Insurance Exchange to Perine Place Owners Association ("Farmers Policy"), under which Coyne was insured in his capacity as an executive officer/director of Perine Place. FIE issued a primary unit-owners policy to Coyne ("FIE Policy") with a per occurrence limit of $300,000. After an initial action from a tenant at the Armenta property was settled, the remaining amount available under the FIE Policy for the fire was $267,000. Farmers issued an HOA policy with a limit of $2,000,000.

On June 7, 2012, Travelers submitted a demand to Farmers, as the primary insurer for Coyne and Perine Place as well as to AAIC, seeking reimbursement of the $1,382,656.25 it had paid on behalf of Armenta. As part of its own investigation of the claim, AAIC requested but did not receive copies of the insurance policies issued to Perine Place. On February 11, 2013, AAIC issued a reservation of rights letter to Coyne and reserved its right to decline coverage for the Armenta claim submitted by Travelers based on Exclusion q excluding coverage for damages arising out of contracting operations. In addition, the reservation of rights letter specifically advised Coyne that the insurance company had not yet had the opportunity to review the underlying Farmers policy and

United States District Court
For the Northern District of California

2

1    stated that there may be additional exclusions or defenses that would restrict coverage.  The letter

2    reserved all rights and policy defenses.  (Falsetto Decl., ¶¶ 11-13, Ex. 2.)

3         On June 28, 2013, on the advice of counsel, AAIC declined coverage to Coyne based on the

4    operation of Exclusion q., which it found precluded coverage for losses arising out of any

5    contracting or property development on or behalf of a covered person.  (*Id*. at ¶¶ 14-16, Ex. 4.)

6    AAIC reserved its right to assert other policy defenses as they became known.  (*Id.* at ¶¶ 16-17, Ex.

7    4.)

8         On June 24, 2013, Armenta filed the Armenta Action in San Francisco Superior Court

9    against Coyne in his individual capacity and in his capacity as President, majority shareholder, board

10   members and/or controlling member of Perine Place.  (*See* Request for Judicial Notice, Ex. A.)[1]  The

11   complaint alleged claims for negligence, strict liability, trespass and private nuisance.  On July 19,

12   2013, Coyne tendered the claim to his primary insurance carrier, Fire Insurance Exchange and to

13   AAIC.  (*Id*. at ¶ 19, Ex. 5.)  Coyne also tendered his defense to AAIC and indicated that he had

14   separately tendered Perine Place's defense to Farmers.  (*Id.* at ¶¶ 20-12, Ex. 5.)  FIE agreed to

15   defend Coyne and Farmers accepted Perine Place's tender subject to a reservation of rights to

16   decline coverage if it was determined that the loss resulted from work to an individual unit.

17   (Declaration of Gailann V. Stargardter ("Stargardter Decl."), Exs. 7, 14.)  The applicable limits of

18   coverage for the fire was $267,000 from the FIE Policy and $2,000,000 from the Farmers coverage

19   of Perine Place.  (*Id.*)  Farmers withdrew its reservation of rights on January 30, 2014 and

20   acknowledged that given his position in the Perine Association, Coyne's knowledge of the activities

21   in his unit could be attributed to the Association.  (*Id.*, Exs. 18-19.)

22        On February 5, 2014, AAIC again declined coverage based upon Exclusion q. governing

23   contracting operations by or on behalf of the insured.  (Falsetto Decl. at ¶¶ 22-25, Ex. 6.)  AAIC

24   reserved the right to assert any other coverage defenses that might be available to it.  (*Id.*)  Coyne

25   and Farmers challenged AAIC's declination of coverage.  On March 31, 2014, AAIC filed this

26   declaratory action seeking a determination of its legal obligations.  On July 10, 2014, Coyne filed an

27   answer and counterclaim for breach of contract/bad faith.  In his counterclaim, Coyne asserts that he

28

---

[1]    The Court GRANTS AAIC's request for judicial notice.  *See* Fed. R. Evid. 201(b).

3

*United States District Court*
For the Northern District of California

1    has been harmed by AAIC's declination of coverage.  In the course of discovery, AAIC obtained a

2    copy of the Farmers Policy and the Settlement Agreement for a judgment of $1,777,826 in the

3    underlying Armenta Action.  (Stargardter Decl. at ¶¶ 15, 17, Ex. 7.)  FIE agreed to pay out its

4    remaining policy limits of $267,000 toward partial satisfaction of the stipulated judgment.  (*Id.*)

5    Farmers agreed to guaranteed recovery in the amount not less than $658,000.  (*Id.*)  Farmers agreed

6    to fund the filing of the counterclaim against AAIC in this action.  The parties to the Armenta Action

7    filed a stipulated judgment pursuant to their Settlement Agreement.  (RJN, Ex. B.)

8         Coyne cross-moves for partial summary judgment on his counterclaims for breach of the

9    implied covenant of good faith and fair dealing and his bad faith claim.

10        The Court shall address specific, additional facts, as necessary, in the remainder of this order.

**ANALYSIS**

**A.    Legal Standard on Motion for Summary Judgment.**

13        A motion for summary judgment is guided by a different standard.  Summary judgment is

14   appropriate when the record demonstrates "that there is no genuine issue as to any material fact and

15   that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue is

16   "genuine" if there is sufficient evidence for a reasonable fact finder to find for the non-moving party.

17   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  "[A]t the summary judgment stage

18   the judge's function is not ... to weigh the evidence and determine the truth of the matter but to

19   determine whether there is a genuine issue for trial."  *Id.* at 249.  A fact is "material" if it may affect

20   the outcome of the case.  *Id.* at 248.  The party moving for summary judgment bears the initial

21   responsibility of identifying those portions of the record which demonstrate the absence of a genuine

22   issue of a material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In the absence of such

23   facts, "the moving party is entitled to a judgment as a matter of law."  *Celotex,* 477 U.S. at 323.

24        Once the moving party meets this initial burden, the non-moving party "may not rest upon

25   the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by

26   affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a

27   genuine issue for trial."  Fed. R. Civ. P. 56(e).  If the non-moving party fails to make this showing,

28   the moving party is entitled to judgment as a matter of law.  *Celotex*, 477 U.S. at 323.

**United States District Court**
For the Northern District of California

1  **B.      Evidentiary Objections.**

2          The parties' evidentiary objections and responses submitted in connection with the cross-

3  motions for summary judgment do not comply with Northern District Local Rule 7-3(c), which

4  requires that all evidentiary objections be contained within a party's brief.  Accordingly, the Court

5  strikes the earlier objections to evidence.

6          AAIC's separately-filed motions to strike the declarations of Coyne's proffered experts,

7  Thomas C. Corridan and Hazel Lopes, are GRANTED.  To the extent the declarations provide

8  relevant evidence, it is limited to the opinions on the ultimate contested issues of law.  Legal

9  conclusions formulated by an expert are not helpful to the trier of fact and are not admissible.  *See,*

10  *e.g., McHugh v. United States Auto. Ass'n*, 164 F.3d 451, 454 (9th Cir. 1999) (holding that expert

11  testimony "cannot be used to provide legal meaning or interpret the policies as written"); *Maffei v.*

12  *Northern Ins. Co. of New York*, 12 F.3d 892, 898-99 (9th Cir. 1993) (excluding expert testimony

13  which consisted of legal opinions about the application of particular exclusion in the policy).

14  Further, the Court GRANTS AAIC's motion to strike the declaration of Ty R. Sagalow as

15  speculative and consisting of improper legal conclusions.  The Court does not consider the

16  declarations relevant to the legal issues presented in the cross-motions for summary judgment.

17  Instead, as is within its province, the Court bases its decision on an independent interpretation the

18  contractual language of the applicable insurance policies.

19  **C.      AAIC's Motion for Summary Judgment.**

20          In this action, AAIC maintains that it had no duty to defend or indemnify Coyne in the

21  underlying action filed by Armenta for two reasons.  First, the amount of liability attributed to

22  Coyne in the Armenta Action by his agreement with the judgment creditor was within the combined

23  limits of insurance of the two primary policies covering the loss, and thus did not fall within the

24  AAIC insuring agreement.  Second, Exclusion q., which precludes coverage for losses "arising out

25  of any contracting or property development operations by or on behalf of a covered person,"

26  removed all potential for coverage for the claim.  Coyne disputes both of these contentions.

27

28

United States District Court
For the Northern District of California

1          **1.      Exhaustion of Limits of Other Insurance.**

2          The umbrella insurance policy issued by AAIC extends coverage for "a covered person's

3   legal obligation to pay damages for a covered loss over and above the 'retained limit.'" (Falsetto

4   Decl., Ex. 1.)  The AAIC policy defines the term "retained limited" to mean "[t]he sum of the

5   applicable limit of liability of your primary insurance as it is shown in this policy's Umbrella

6   Schedule and the actual amount collectible under any other insurance which applies." (*Id.*)  The

7   AAIC policy defines "other insurance" to mean "insurance available to any covered person that

8   covers a loss to which this policy applies, other than either primary insurance or insurance

9   specifically purchased by you to be in excess of the insurance afforded by this policy." (*Id.*)  The

10  AAIC policy defines "loss" as "an accident, including continuous or repeated exposure to

11  substantially the same general harmful conditions which results in bodily injury or property damage

12  during the policy period." (*Id.*)  Before the duty to defend is triggered in the AAIC umbrella

13  insurance policy, the other insurance policies available to Coyne to cover the loss have to have been

14  exhausted.  In this case, they were not.

15          Coyne was covered as an individual by his primary insurance policy from Fire Insurance

16  Exchange up to the amount of $267,000.  The Farmers Policy issued to Perine Place HOA and under

17  which Coyne is an insured in his capacity as an officer/director of the HOA covered the remainder

18  of the stipulated settlement amount.  Coyne, however, argues that the HOA insurance covered a

19  different risk and does not qualify under the definition of "other insurance" which must be exhausted

20  prior to availability of AAIC's umbrella policy.  Coyne argues that the AAIC "other insurance"

21  provision only applies to insurance available to a covered person and contends that the Farmers

22  policy only covered the HOA.  However, the underlying complaint in the Armenta Action created

23  potential liability for both Coyne as an individual and as an officer and shareholder of Perine Place.

24  The scope of coverage is determined by the allegations in the underlying complaint which alleges

25  loss to both Coyne as an individual and to an officer of Perine Place.  The Court is not persuaded by

26  Coyne's contentions that the HOA policy does not cover the same covered person and loss, thereby

27  not exhausting the underlying policies' coverage and failing to trigger AAIC's duties.  *See*

28  *Community Redevelopment Agency v. Aetna Cas. & Sur. Co.*, 50 Cal. App. 4th 329, 338 (1996)

6

United States District Court
For the Northern District of California

1 (holding that "[u]nless the provisions of an excess policy provide otherwise, an excess insurer has no

2 obligation to provide a defense to its insured before the primary coverage is exhausted."); *see also*

3 *Hartford Accident & Indem. Co. v. Superior Court*, 23 Cal. App. 4th 1774, 1779-80 (1994) (holding

4 that an excess carrier is not responsible for costs of defenses incurred before the primary coverage is

5 exhausted). Accordingly, because the limits of both the FIE Policy and the Farmers Policy were not

6 exhausted, the Court finds that AAIC had no duty to defend or indemnify Coyne against the claims

7 alleged in the Armenta Action. Accordingly, the Court GRANTS summary judgment and

8 declaratory relief for AAIC.

9          **2.          Operation of Exclusion q.**

10          In the alternative, AAIC contends that the operation of Exclusion q. obviates the potential for

11 any coverage of the Armenta Action under the AAIC policy. Exclusion q. excludes from coverage

12 "[l]oss arising out of any contracting or property development operations by or on behalf of any

13 covered person." (Falsetto Decl., Ex. 1 at 0009.)

14          The interpretation of an exclusionary clause is an issue of law subject to the court's

15 independent determination. *Marquez Knolls Property Owners Ass'n, Inc. v. Executive Risk Indem.,*

16 *Inc.*, 153 Cal. App. 4th 228, 233 (2007). While coverage clauses are interpreted broadly in favor of

17 coverage, exclusionary clauses are interpreted narrowly against the insurer. *State Farm Mut. Auto.*

18 *Ins. Co. v. Partridge*, 10 Cal. 3d 94, 101-02 (1973). "[A]ny exception to the performance of the

19 basic underlying obligation must be so stated as clearly to apprise the insured of its effect." *Gray v.*

20 *Zurich Ins. Co.*, 64 Cal. 2d 263, 269 (1966). In order to be effective, an exclusionary clause must be

21 conspicuous, plain and clear. *See E.M.M.E. Inc. v. Zurich Am. Ins. Co.*, 32 Cal. 4th 465, 471 (2004).

22          The exclusion is conspicuously located in the list of AAIC policy's series of exclusions. *See*

23 *N. Am. Speciality Ins. Co. v. De Anda*, 247 Fed. Appx. 918, 921-22 (9th Cir. 2007) (holding that the

24 heading of exclusions is sufficient to alert a reader's attention to a section purporting to exclude

25 coverage). The only remaining question is whether the exclusion on its face is unambiguous in its

26 meaning. In order to be plain and clear, "the substance of the exclusion must be precise and

27 understandable – its substance must be stated in words that convey the proper meaning to persons

28 expected to read the contract." *Malcolm v. Farmers New World Life Ins. Co.*, 4 Cal. App. 4th 296,

300 (1992).  AAIC contends that the exclusion applies to the contracting operations performed by Coyne's subcontractors when engaged in the remodel of his unit.  Coyne contends that the term "contracting" clearly refers to the business of a general contractor or, at the every least, pertains to the business activities of the insured.  Coyne therefore contends that the remodel of his personal residence does not qualify as an excluded business activity and should not fall within the exclusion of coverage.  However, the business activities of the insured are specifically excluded, with certain conditions, in an earlier enumerated exclusion, Exclusion 1a.  (Falsetto Decl., Ex. 1 at 0007.)  The Court finds Coyne's interpretation of the exclusion untenable.  Although the Court finds that, as currently drafted, Exclusion q. is not a model of clarity, the reasonable interpretation of the clause precludes coverage for contracting operations on Coyne's behalf, including the welding which caused harm in the underlying action.  Although the Court need not reach the issue conclusively as it has granted summary judgment on the failure of exhaustion of primary policies, the Court finds AAIC's legal interpretation of the exclusion to preclude coverage was reasonable.

**D.      Coyne's Cross-Motion for Partial Summary Judgment.**

Coyne moves for partial summary judgment on his counterclaim for breach of the implied covenant of good faith and fair dealing and his bad faith claim.  As the Court has found that AAIC had no duty to defend or indemnify Coyne against the claims in the underlying Armenta Action, Coyne cannot state a claim for breach of contract or breach of the covenant of good faith and fair dealing.  *See Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 35-36 (1995) (holding that if there is no potential for coverage and no duty to defend, there can be no action for breach of the implied covenant of good faith and fair dealing because the covenant is based on the contractual relationship between the insured and the insurer).

Lastly, Coyne moves for summary judgment on his bad faith claim based on his contention that AAIC did not fully investigate his insurance claim before issuing its denial letters or filing this declaratory relief action.  However, where an insurer's denial of a claim is based on a reasonable construction of its policy, a court may find as a matter of law that the insurer did not act in bad faith.  *See Lunsford v. Am. Guar. and Liability Ins. Co.*, 18 F.3d 653, 656 (9th Cir. 1994) (holding that a court can conclude as a matter of law that an insurer's denial of a claim is not unreasonable so long

**United States District Court**
For the Northern District of California

as there existed a genuine issue as to the insurer's liability).  Where the Court finds the insurance company conduct was based on a reasonable construction of the policy, it may find an absence of bad faith as a matter of law.  *See Am. Cas. Co. of Reading, Pennsylvania v. Krieger*, 181 F.3d 1118, 1123 (9th Cir. 1999).  Further, AAIC has made a sufficient showing that it reasonably relief on the advice of counsel to deny coverage.  *See Melorich Builders, Inc. v. Superior Court*, 160 Cal. App. 3d 931, 936-37 (1984).  Accordingly, the Court finds Coyne cannot make out a bad faith claim.

### CONCLUSION

For the foregoing reasons, the Court GRANTS AAIC's motion for summary judgment and DENIES Coyne's motion for partial summary judgment.  A separate judgment shall issue and the clerk is instructed to close this case.

**IT IS SO ORDERED.**

Dated:   March 1, 2016

_____
JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

9